J-S28032-18

2018 PA Super 265

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SABINE I. GRAHAM | : | No. 1438 MDA 2017 |

Appeal from the Order Entered August 15, 2017
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000758-2017

BEFORE: OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

OPINION BY OLSON, J.: **FILED SEPTEMBER 24, 2018**

The Commonwealth of Pennsylvania (Commonwealth) appeals from the order entered on August 15, 2017 which granted Sabine I. Graham's (Graham) motion to transfer venue and transferred this case from Centre County to Clinton County.[1] After careful consideration, we vacate and remand.

The trial court summarized the relevant facts as follows:

The Commonwealth alleges that on February 13, 2016, [Graham], along with Maria Gilligan [(Gilligan)] and Corinne Pena [(Pena)], traveled from State Collage, in Centre County, to Lock Haven, in Clinton County. The purpose of this trip was for [Graham] to obtain heroin to sell to Gilligan and Pena. [Graham] met with a man named "Jay" in the Lock Haven area and obtained twenty-two (22) bags of what [Graham] believed to be heroin. [Graham] then gave fourteen (14) of those bags to Pena before [Graham], Gilligan, and Pena drove back to State College. When Pena returned to State College, her friend[,] Robert Moir [(Moir),]

---

[1] An appeal from an interlocutory order transferring venue in a criminal case is reviewable as of right. **See** Pa.R.A.P. 311(3).

picked her up from the parking lot near Walmart on North Atherton Street and drove her to his home. Later that evening, Pena ingested eight (8) bags of what she believed was heroin. The bags actually contained fentanyl[,] and Pena subsequently died of a fentanyl overdose [in Moir's home].

Trial Court Opinion, 8/15/17, at 1-2.

Graham was charged in Centre County with one count of drug delivery resulting in death, possession with intent to deliver a controlled substance, and delivery of a controlled substance.[2] *See* 18 Pa.C.S.A. § 2506(a); 35 P.S. § 780-113(a)(30). Graham filed a motion to transfer on June 28, 2017,[3] asserting that venue in Centre County was improper, and that the case should be transferred to Clinton County. Following a hearing and an opportunity for both parties to submit briefs on the issue, the trial court granted Graham's motion to transfer and directed that the case be transferred to Clinton County.

The Commonwealth filed a timely notice of appeal. On September 14, 2017, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After receiving an extension of time to file its concise statement, the Commonwealth complied.

The Commonwealth's brief raises the following question for our review:

---

[2] Gilligan was also charged as a result of the incident, and on June 1, 2017, the Commonwealth issued notice of its intent to consolidate the cases pursuant to Pa.R.Crim.P. 582. Gilligan, however, is not a party to the instant appeal.

[3] The motion was docketed on June 29, 2017.

Whether Centre County has properly exercised venue over a prosecution for a criminal episode that began in Centre County with an agreement to obtain heroin and ended in Centre County with a deceased overdose victim whose body was found in Centre County?

Commonwealth's Brief at 4.

"Appellate review of venue challenges, similar to that applicable to other pre-trial motions, should turn on whether the trial court's factual findings are supported by the record and its conclusions of law are free of legal error." *Commonwealth v. Gross*, 101 A.3d 28, 33-34 (Pa. 2014).

The Commonwealth argues that the trial court erred in granting Graham's motion to transfer. Commonwealth's Brief at 10. Characterizing this case as a homicide, the Commonwealth argues that "jurisdiction is conferred upon Centre County by statute" because Pena's body was recovered in Centre County. *Id*. (quotation and ellipses omitted); *see also* 18 Pa.C.S.A. § 102(c) (stating that [w]hen the offense is homicide …, either the death of the victim … or the bodily impact causing death constitutes a 'result' …, and if the body of a homicide victim … is found within this Commonwealth, it is presumed that such result occurred within this Commonwealth[]").[4] Additionally, the Commonwealth argues that Centre County is the proper

_____

[4] The Commonwealth in its brief cites to *Commonwealth v. Ludwig*, 874 A.2d 623 (Pa. 2005) and asserts that 18 Pa.C.S.A. § 2506 classifies drug delivery resulting in death a murder of the third degree. Although the version of § 2506 challenged in *Ludwig* defined the offense as third-degree murder, the current version of § 2506 defines drug delivery resulting in death as a felony of the first-degree. *See* 18 Pa.C.S.A. § 2506.

venue because it is the county where (1) law enforcement started an investigation; (2) the autopsy was performed; (3) witnesses reside; and, (4) physical evidence was collected. Commonwealth's Brief at 15. The Commonwealth also points out that both Graham and co-defendant Gilligan were residents of Centre County. *Id.*

Our Supreme Court has explained the concept of venue under Pennsylvania law and contrasted that concept with the closely-related subject of jurisdiction.

> Jurisdiction relates to the court's power to hear and decide the controversy presented. *Commonwealth v. Bethea*, 828 A.2d 1066, 1074 (Pa. 2003) (citation omitted). "[A]ll courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code." *Id.* … Venue, on the other hand, refers to the convenience and locality of trial, or "the right of a party to have the controversy brought and heard in a particular judicial district." *Bethea*, at 1074 (citation omitted). Venue assumes jurisdiction exists and it "can only be proper where jurisdiction already exists." *Id.* at 1074–1075 (citation omitted). Even though all common pleas courts may have jurisdiction to resolve a case, such should only be exercised in the judicial district in which venue lies. *See id.* at 1075 ("Rules of venue recognize the propriety of imposing geographic limitations on the exercise of jurisdiction."). "Venue in a criminal action properly belongs in the place where the crime occurred." *Id.* (citation omitted).
>
> Our criminal procedural rules provide a system in which defendants can seek transfer of proceedings to another judicial district due to prejudice or pre-trial publicity. Such decisions are generally left to the trial court's discretion. *See Commonwealth v. Chambers*, 685 A.2d 96, 103 (Pa. 1996) (citation omitted). Venue challenges concerning the locality of a crime, on the other hand, stem from the Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution, both of which require that a criminal defendant stand trial in the county in which the crime was committed, protecting the accused from unfair prosecutorial forum shopping. Thus, proof of venue,

- 4 -

or the locus of the crime, is inherently required in all criminal cases.

The burden of proof in relation to venue challenges has not been definitively established in our decisional law or our criminal procedural rules. Because the Commonwealth selects the county of trial, we now hold it shall bear the burden of proving venue is proper—that is, evidence an offense occurred in the judicial district with which the defendant may be criminally associated, either directly, jointly, or vicariously. Although our sister states are not in agreement as to the requisite degree of proof, [the Pennsylvania Supreme Court finds that] the Commonwealth should prove venue by a preponderance of the evidence once the defendant properly raises the issue. Venue merely concerns the judicial district in which the prosecution is to be conducted; it is not an essential element of the crime, nor does it relate to guilt or innocence. Because venue is not part of a crime, it need not be proven beyond a reasonable doubt as essential elements must be. Accordingly, applying the preponderance-of-the-evidence standard to venue challenges allows trial courts to speedily resolve this threshold issue without infringing on the accused's constitutional rights. Like essential elements of a crime, venue need not be proven by direct evidence but may be inferred by circumstantial evidence. *See*, *e.g.*, *Commonwealth v. Cooper*, 941 A.2d 655, 662 (Pa. 2007) (citation omitted)[.]

*Commonwealth v. Gross*, 101 A.3d 28, 32-34 (Pa. 2014) (parallel citations omitted).

Although there is no exclusive provision which sets forth the statutory grounds for establishing venue in a particular county within Pennsylvania, "our courts frequently [look to 18 Pa.C.S.A. § 102] in determining the proper county in which a criminal trial should take place." *Commonwealth v. Field*, 827 A.2d 1231, 1233 (Pa. Super. 2003) (citing cases), *appeal denied*, 847 A.2d 1279 (Pa. 2004). Looking to this provision, § 102 provides, in relevant part, that an individual may be convicted in a county if, among other things,

- 5 -

his "conduct which is an element of the offense **or** the result of which is such an element occurs within the [county]." 18 Pa.C.S.A. § 102(a)(1) (emphasis added). Under § 102, then, venue is proper in a county where either an element of an offense **or** a required result occurs. An "element of an offense" consists of conduct which is "included in the description of the forbidden conduct in the definition of the offense." **See** 18 Pa.C.S.A. § 103. Section 102 further provides that in the case of a homicide, "either the death of the victim ... or the bodily impact causing death constitutes a result within the meaning of paragraph (a)(1) of this section[.]" 18 Pa.C.S.A. 102(c) (internal citations omitted). In the present case, the Commonwealth charged the defendant with drug delivery resulting in death, which involves two principal elements: (1) an intentional conveyance of any controlled substance or counterfeit controlled substance, and (2) death resulting from the use of the conveyed substance. **See Commonwealth v. Kakhankham**, 132 A.3d 986, 991-992 (Pa. Super. 2015), *appeal denied*, 138 A.3d 4 (Pa. 2016).

The trial court concluded that while the victim died in Centre County, and while the death of an individual is an element of the instant offense, it would be inappropriate for Centre County to exercise venue since the only overt act was the defendant's conveyance of drugs to the victim, which occurred in Clinton County. **See** Trial Court Opinion, 8/15/17, at 3. In resolving the venue question presented in this case, the trial court relied solely

on the defendant's overt act of conveying a controlled substance to the victim without regard to the resulting death that occurred in Centre County.

The trial court misconstrued the plain language of § 102. The court seems to conclude that venue is proper only where an overt act occurred, regardless of the location where an elemental result transpires. Under the plain terms of § 102, however, venue is proper where **either** an element of the offense occurred **or** a required result took place. Here, the defendant conveyed a controlled substance to the victim in Clinton County and, thereafter, the victim ingested the drugs and died in Centre County. Under § 102, the statutory requirements for venue exist in both Clinton and Centre Counties. Since venue would be proper in either county under § 102, it was incumbent upon the trial court to assess the convenience of the parties in going forward with the proceedings in either Clinton County or Centre County. *See Bethea*, 828 A.2d at 1074-1075 ("venue pertains to the locality most convenient to the proper disposition of a matter"). Because it was error for the trial court to exclude Centre County as a viable venue option, we vacate the court's transfer order and remand this matter for further proceedings in which the convenience of the parties can be assessed.

Order vacated.  Case remanded.  Jurisdiction relinquished.

Judge Kunselman joins.

Judge Musmanno files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2018