J-S49021-20

2021 PA Super 36

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAMEON ARRINGTON | : | |
| | : | |
| Appellant | : | No. 579 WDA 2020 |

Appeal from the Judgment of Sentence Entered November 20, 2019
In the Court of Common Pleas of Clarion County Criminal Division at
No(s):  CP-16-CR-0000597-2018

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY DUBOW, J.:                    **FILED: MARCH 8, 2021**

Appellant, Dameon Arrington, appeals from the November 20, 2019

Judgment of Sentence entered in the Court of Common Pleas of Clarion County

after a jury convicted him of various offenses including Involuntary

Manslaughter, Conspiracy to Commit Involuntary Manslaughter, and Drug

Delivery Resulting in Death ("DDRD").[1] Appellant argues that Conspiracy to

Commit Involuntary Manslaughter is not a cognizable offense in Pennsylvania

and further alleges that the trial court erred by denying his motions to transfer

venue and remove a juror. After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2504(a) 903, and 2506(a) respectively. The jury also
convicted Appellant of one count each of Conspiracy to Commit DDRD and
Criminal Use of a Communication Facility, two counts each of Possession with
Intent to Distribute ("PWID"), Possession of a Controlled Substance, and
Possession of Drug Paraphernalia, and an additional count of Conspiracy. 18
Pa.C.S. § 7512(a), 35 P.S. §§ 780-113(a)(30), 780-113(a)(16), 780-
113(a)(32); and 18 Pa.C.S. § 903, respectively.

We derive the following factual and procedural history from the trial court Opinion and certified record. On August 13, 2018, Appellant contacted Matthew McDermid to offer to sell him heroin. Appellant was located in Pittsburgh, Allegheny County, and McDermid lived in Clarion County. McDermid did not have money to buy the drugs, so he contacted Tanner Eisenman ("Decedent"). Decedent was also a Clarion County resident. McDermid and Decedent had a preexisting relationship where McDermid would drive the pair to Pittsburgh, and Decedent would purchase heroin for them.

McDermid and Decedent drove to Pittsburgh on August 14, 2018. They purchased 30 bags of heroin laced with fentanyl from Appellant. Decedent gave McDermid five bags and kept 25 for himself. McDermid then dropped Decedent off at home.

Decedent shared a home with his girlfriend, Amber Snyder. On August 15, 2018, when Snyder returned home from work at approximately 8:00 PM, she found Decedent dead, lying face down on their living room floor. Investigators found 21 stamp bags of heroin in Decedent's pants pockets and determined that he died due to fentanyl overdose.

After Decedent's death, McDermid agreed to serve as a confidential police informant ("CI") for Clarion County Chief Detective William Peck. On August 17, 2018, at Detective Peck's instruction, McDermid purchased heroin laced with fentanyl from Appellant in Pittsburgh. On August 22, 2018, McDermid performed another controlled heroin buy from Appellant in Pittsburgh.

Clarion County police arrested Appellant and charged him with the above crimes.[2] On March 22, 2019, Appellant filed a Pretrial Motion seeking to change venue from Clarion County to Allegheny County. He argued that venue was proper in Allegheny County because that is where the drug sale occurred.

The court held a hearing on Appellant's Motion on April 22, 2019. The Commonwealth argued that venue was proper in Clarion County because Decedent died there. Neither party presented evidence.

On May 2, 2019, the court denied Appellant's Motion. It reasoned that venue was proper in Clarion County because (1) Decedent died in Clarion County, and death is an element of DDRD, discussed *infra*, and (2) it was the site of the majority of the evidence and witnesses in the case.

Appellant's trial started on October 21, 2019. During a recess on the first day of trial, Appellant's counsel reported to the court that he observed a Commonwealth witness, police Officer Neil Kemmer, having a conversation with Juror No. 4. Appellant moved to have Juror No. 4 removed from the jury.

The court held a hearing on Appellant's Motion. It questioned Juror No. 4 about the substance of the conversation. The juror said that he talked to Officer Kemmer for approximately three to four minutes about hunting. He and Officer Kemmer grew up together but had no association for more than a

---

[2] The Commonwealth also charged Appellant with Delivery of a Controlled Substance, Possession of a Controlled Substance, Possession of Drug Paraphernalia, and Criminal Use of a Communication Facility related to the August 22, 2018 heroin sale. The jury acquitted Appellant of these charges.

decade. He assured the court that neither his conversation nor acquaintance with Officer Kemmer would prevent him from being a fair juror.

The court denied Appellant's Motion to dismiss Juror No. 4. It reasoned that Juror No. 4 could be fair and impartial, Officer Kemmer had limited involvement in the investigation, and Appellant did not contest Officer Kemmer's testimony or credibility.

At the conclusion of trial, the jury convicted Appellant of the above crimes. The court sentenced Appellant to an aggregate term of 11½ to 23 years' incarceration.

Appellant timely filed a Post-Sentence Motion seeking a new trial for, *inter alia*, the court's refusal to dismiss Juror No. 4. On April 17, 2020, the court denied Appellant's Motion.

Appellant timely filed a Notice of Appeal.[3] Both he and the Commonwealth complied with Pa.R.A.P. 1925. Appellant presents the following issues for our review:

> 1. Whether Conspiracy to Commit Involuntary Manslaughter is a cognizable offense in Pennsylvania.
>
> 2. Whether the lower court erred by denying Appellant's Pretrial Motion to transfer venue from Clarion County to Allegheny County.
>
> 3. Whether the lower court erred by denying Appellant's request to have Juror No. 4 removed from the jury.

---

[3] We deem Appellant's Notice of Appeal, filed May 27, 2020, to be timely filed. ***See In Re: Statewide Judicial Emergency – Suspension Superior Court of Pennsylvania***, No 3. Administrative Docket (Order filed March 17, 2020) (extending filing deadline by 30 days for all appeals from orders entered from March 18, 2020, to April 17, 2020).

Appellant's Br. at 5 (rephrased for clarity and reordered for ease of analysis).

In his first issue, Appellant argues that Conspiracy to Commit Involuntary Manslaughter is not a cognizable offense under Pennsylvania law because conspiracy requires the specific intent to promote or facilitate the commission of a crime, but a person cannot intend to commit an unintentional killing.[4] Appellant's Br. at 16-17.

This is a purely legal question over which our scope of review is plenary and standard of review is *de novo*. **Commonwealth v. Fisher**, 80 A.3d 1186, 1189 (Pa. 2013). Further, this question poses an issue of first impression in this Commonwealth. After careful review, we conclude that Conspiracy to Commit Involuntary Manslaughter is a cognizable offense in Pennsylvania.

In deciding whether Conspiracy to Commit Involuntary Manslaughter is a cognizable offense, we look first to the pertinent sections of the Crimes Code. Involuntary Manslaughter is defined as (1) an act, (2) done with a

---

[4] Appellant presents a two-part question in his first issue. He challenges (1) whether Criminal Conspiracy to Commit Involuntary Manslaughter is a cognizable offense in Pennsylvania, and (2) the sufficiency of the Commonwealth's evidence to convict him of the same. Appellant's Br. at 5. However, in the Argument section of his Brief, Appellant develops only his allegation that Conspiracy to Commit Involuntary Manslaughter is not cognizable in Pennsylvania. **See** Appellant's Br. at 16-17. He does not develop his sufficiency argument and, therefore, it is waived. **Commonwealth v. Gibbs**, 981 A.2d 274, 284 (Pa. Super. 2009) ("It is Appellant's obligation to sufficiently develop arguments in his brief . . . If an appellant does not do so, we may find the argument waived."). Appellant has preserved, and we will address, the issue of whether Conspiracy to Commit Involuntary Manslaughter is a cognizable offense in Pennsylvania.

reckless state of mind, that (3) causes the victim's death. 18 Pa.C.S. § 2504(a); **Commonwealth v. Huggins**, 836 A.2d 862, 865-68 (Pa. 2003).

Recklessness is the conscious disregard of a substantial and unjustifiable risk. 18 Pa.C.S. § 302(b)(3). "Conscious disregard of a risk, in turn, involves first becoming aware of the risk and then choosing to proceed in spite of the risk." **Commonwealth v. Bostian**, 232 A.3d 898, 909 (Pa. Super. 2020) (citation and quotation marks omitted). **See also Commonwealth v. Vogelsong**, 90 A.3d 717, 719 (Pa. Super. 2014) (recklessness requires conscious action or inaction that creates substantial risk of harm to others, whereas negligence suggests unconscious inadvertence); **Commonwealth v. Gilliland**, 422 A.2d 206, 207 (Pa. Super. 1980) (requiring a "conscious realization of a substantial risk which was subsequently disregarded").

The victim's death must be a direct and natural consequence of the defendant's reckless action. **Commonwealth v. Fabian**, 60 A.3d 146, 152 (Pa. Super. 2013); **Commonwealth v. Long**, 624 A.2d 200, 204 (Pa. Super. 1993).

To sustain a conviction for Conspiracy, the Commonwealth must establish that the "defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." **Fisher**, 80 A.3d at 1190 (citation omitted); 18 Pa.C.S. § 903(a). "Conspirators need not contemplate the ultimate crime in order to be charged and convicted

of conspiracy to commit that crime." ***Commonwealth v. Carr***, 227 A.3d 11, 17 (Pa. Super. 2020).

In addition to the pertinent sections of the Crimes Code, we look to relevant case law. Particularly instructive is our Supreme Court's decision in ***Fisher***, ***supra***, and this Court's decision in ***Carr***, ***supra***. In short, these cases instruct that a defendant may conspire to commit a crime that includes an unintentional death as an element of the offense, so long as the defendant acted with another to intentionally perform the act that resulted in the death.

In ***Fisher***, ***supra*** at 1187, the appellant and several friends agreed to "jump" a man in downtown Philadelphia. During the beating, the man suffered a fatal asthma attack. ***Id.*** The trial court convicted the appellant of, among other things, Conspiracy to Commit Third-Degree Murder. ***Id.*** Third-Degree Murder involves (1) an intentional act, (2) done with malice, that (3) results in an unintentional killing. ***Id.*** at 1191.

On appeal, the appellant argued that because Conspiracy is a specific intent crime, and Third-Degree Murder involves an unintentional death, then a person cannot conspire to commit Third-Degree Murder because one cannot intend to commit an unintentional act. ***Id.*** at 1190. This is the same syllogistic argument made by Appellant in the present case.

Our Supreme Court rejected the appellant's argument. It observed that "one does not conspire to commit a denominated offense, one conspires to engage in certain conduct." ***Id.*** at 1195. Thus, "[w]here, as here, the defendant intends the underlying act (the beating) which results in death, the

evidence supports the charge of conspiracy to commit third degree murder." *Id.* In other words, it is sufficient if the defendant "committed an intentional act, characterized by malice, that results in death, intended or not." *Id.* at 1191. Even though the killing was "not specifically contemplated by the parties . . . responsibility attaches . . . to a homicide which is a contingency of the natural and probable execution of the conspiracy[.]" *Id.* at 1192 (emphasis and citation omitted).

In **Carr**, **supra**, this Court concluded that Conspiracy to Commit DDRD is a cognizable offense under Pennsylvania law. DDRD consists of (1) the intentional delivery, distribution, or sale of contraband, (2) done with a reckless disregard of death, that (3) results in a death from the use of that substance. *Id.* at 15-17; 18 Pa.C.S. § 2506(a). Again, the defendant based his argument on the same premise as in the instant case: "it is logically impossible for a person to intentionally conspire to achieve an unintended reckless result." *Id.* at 14.

We disagreed. Relying on **Fisher**, we reasoned that "conspirators need not contemplate the ultimate crime in order to be charged and convicted of conspiracy to commit that crime . . . the conspiracy to commit an overt act binds the conspirators to the foreseeable consequences of the conduct." *Id.* at 17-18. We concluded that the conspiracy formed when the defendant intentionally conspired with another to deliver drugs. *Id.* at 18. It then extended to the decedent's death because death was a "natural and probable consequence" of the drug sale. *Id.*

- 8 -

Applying the above precedent, we conclude that when a defendant acts with another to intentionally commit an unlawful act characterized by the conscious disregard of a substantial and unjustifiable risk (*i.e.* a reckless act), that results in a death that was a natural and probable result of that act, the defendant is guilty of Conspiracy to Commit Involuntary Manslaughter. It does not matter that the conspirators did not intend to cause the death. The intent to commit a reckless act binds the conspirators to the foreseeable consequences of their actions. The crime of Conspiracy to Commit Involuntary Manslaughter is, therefore, cognizable in Pennsylvania. Appellant's claim fails.

In his second issue, Appellant challenges the trial court's denial of his Motion to transfer venue. Appellant's Br. at 12-13. He claims that the court should have transferred venue to Allegheny County because that is where he sold narcotics to Decedent. *Id.* at 12. In the alternative, Appellant argues that Allegheny County was a more convenient venue than Clarion County because both controlled buys occurred there. *Id.* at 13.

Similar to other pretrial motions, appellate review of a venue decision "turn[s] on whether the trial court's factual findings are supported by the record and its conclusions of law are free of legal error." ***Commonwealth v. Gross***, 101 A.3d 28, 33-34 (Pa. 2014). "Venue in a criminal action properly belongs in the place where the crime occurred." ***Id.*** at 33 (citation omitted). When venue is proper in more than one county, the trial court should balance the convenience of each venue to the parties. ***Commonwealth v. Graham***, 196 A.3d 661, 665 (Pa. Super. 2018).

This Court recently addressed a question of venue under circumstances similar to those present in this case. In *Graham*, *supra*, the defendant traveled with two companions from Centre County to Clinton County to obtain heroin. The defendant purchased twenty-two bags of what he believed was heroin, then gave fourteen of those bags to one of his companions. Upon her return to Centre County, the companion ingested several bags of the substance, which turned out to be fentanyl, and died of an overdose*. Id.* at 662.

Prosecutors charged the defendant in Centre County (where the victim died) with, among other things, DDRD. *Id.* The defendant filed a motion to transfer venue, asserting that the case should proceed in Clinton County. *Id.* at 662-63. The trial court granted the motion, reasoning that, although the victim died in Centre County, the defendant's only overt act had occurred in Clinton County. *Id.* at 665.

On appeal, we rejected the trial court's reasoning. We observed that, pursuant to 18 Pa.C.S. § 102, "venue is proper in a county where either an element of an offense or a required result occurs." *Id.* at 664. Regarding the charge of DDRD, we recognized "two principal elements: (1) an intentional conveyance of any controlled substance or counterfeit controlled substance, and (2) death resulting from the use of the conveyed substance." *Id.* at 665. Thus, under the facts of the case, we concluded that venue was proper either in Clinton County, where the defendant had conveyed a controlled substance

to his companion, or in Centre County, where the companion had ingested the controlled substance and died. ***Id.***

In the present case, the trial court correctly determined that venue was proper in Allegheny County where Appellant sold Decedent narcotics, and Clarion County where Decedent died. Trial Ct. Op., 5/2/19, at 4-5.

Finding that venue was proper in both counties, the trial court balanced each county's convenience to the parties before concluding that Clarion County was more the appropriate venue for trial. Trial Ct. Op., 5/2/19, at 5. It considered Appellant's argument that "all of the drug transactions at issue took place in Allegheny County and the . . . controlled buys [occurred] in Allegheny County." ***Id.*** It concluded, however, that "this ignores [that] the majority of evidence and witnesses related to this case are located in Clarion County[.]" ***Id.*** at 5-6. The court explained that, "(1) the victim resided in Clarion County and died there; (2) the victim's autopsy was conducted by Dr. Vey, who performs autopsies for Clarion County; (3) the lead investigator and coordinator of the controlled buys for this case is Chief Peck, who is . . . the Chief Detective for Clarion County; and (4) most if not all of the witnesses for the Commonwealth, including Matthew McDerm[id] and Officer Roger Wright, reside in Clarion County." ***Id.*** at 5.

The trial court, thus, considered and balanced all of the relevant facts of the case. It properly applied controlling case law to determine that venue was proper in both Allegheny County and Clarion County and exercised its discretion in concluding that Clarion County was more convenient based on

the location of the witnesses and other evidence. As a result, we discern no error of law or abuse of discretion and, therefore, Appellant's claim fails.

In his third issue, Appellant claims that the trial court erred by denying his Motion to dismiss Juror No. 4 for having *ex parte* communication with Officer Kemmer, a Commonwealth witness. Appellant's Br. at 13-16. Appellant alleges that the conversation between Juror No. 4 and Officer Kemmer necessitated that Juror No. 4 be removed from the jury because the "situation implicates the danger of unconscious bias warned of in [***Commonwealth v.*** ]***Mosley***[ 637 A.2d 246 (Pa. 1993)]." Appellant's Br. at 15. He compares the conduct in the present case to that reviewed by the ***Mosley*** Court and concludes that "[t]he nature of the communication and relationship between [Officer] Kemmer and Juror[ No.] 4 are far more likely to implicate bias than in ***Mosley***." ***Id.*** In essence, Appellant argues that ***Mosley*** sets a *per se* floor for conduct requiring juror disqualification, and the conduct in this case exceeds that floor.

Whether such *ex parte* contact warrants a mistrial is a matter addressed to the trial court's discretion. ***Commonwealth v. Brown***, 786 A.2d 961, 972 (Pa. 2001). Contrary to Appellant's assertion, the ***Mosley*** Court expressly disapproved of a *per se* rule requiring juror disqualification anytime there is *ex parte* contact between a juror and witness. 637 A.2d at 249. Instead, "explicit in the cases involving [improper] juror contact is the requirement that the defendant show that he was prejudiced." ***Commonwealth v. Szakal***, 50 A.3d 210, 220 (PA. Super. 2012) (citation omitted). A showing of prejudice is

unlikely when the contact between a witness and juror is minimal and is not done "for the purpose of influencing the mind of the jury." **Mosley**, **supra** at 249 (citations omitted).

Our Supreme Court's holding in **Mosley** is instructive but does not support Appellant's argument. In that case, a Commonwealth witness engaged in a brief *ex parte* communication with a juror during trial. **Id.** at 249. The witness, a police officer, "was [] directly involved in the altercation which led to the charges upon which [the a]ppellant was convicted." **Id.** The trial court held a hearing to rule on the defendant's request to excuse the juror. **Id.** The juror did not testify at the hearing. **Id.** at 248.

On review, our Supreme Court concluded that the trial court erred by not questioning the juror involved in the *ex parte* communication. **Id.** at 250. It reasoned that, given the Commonwealth witness's integral role in the criminal investigation underlying the appellant's convictions, "[w]ithout the juror's testimony, the trial judge was not in a position to determine that the encounter between [the Commonwealth witness] and the juror amounted to harmless error." **Id.**

In contrast to **Mosley**, "Officer Kemmer's testimony was really just factual" and "[h]is testimony and credibility were not contested by [Appellant]." N.T. Trial, 10/21/19, at 112; Trial Ct. Op., 4/17/20, at 12. Officer Kemmer's role was limited to collecting evidence at Decedent's home and taking Snyder's statement. N.T. Trial, 10/21/19, at 38-44. He had no role in investigating Appellant's drug dealing. **Id.**

- 13 -

Additionally, the trial court questioned Juror No. 4 on whether he could continue to serve on the jury without being subject to an unconscious influence or bias. In part, the court inquired:

> THE COURT: Okay. With your acquaintance with [Officer] Kemmer, do you think that affects your ability to be fair as a juror in this case?
>
> THE JUROR: No.
>
> THE COURT: Would you give the Commonwealth more credit or benefit because of your association with him?
>
> THE JUROR: I think it is neutral.
>
> THE COURT: You think it is neutral. The fact that [Officer] Kemmer testified on behalf of the Commonwealth, would that have any [e]ffect on your ability to give the defendant a fair trial?
>
> THE JUROR: It wouldn't affect me.

*Id.* at 110.

Based on Juror No. 4's testimony, the court found that he "was not biased or prejudiced in favor or against either party[, and] his acquaintance with Officer Kemmer [did] not affect his ability to be a fair juror." Trial Ct. Op., 4/17/20, at 11-12.

Finally, Officer Kemmer's conversation with Juror No. 4 was "casual" and not for the purpose of influencing the jury. *See id.* at 11; N.T. Trial, 10/21/19, at 38-44, 109.

After careful review, we discern no abuse of discretion in the trial court's decision to retain Juror No. 4. Officer Kemmer had a limited role in investigating Appellant, his conversation with Juror No. 4 was innocuous, and the court properly ensured that Juror No. 4 could maintain impartiality

notwithstanding the *ex parte* communication. Appellant's reliance on **Mosley** is unpersuasive, and he makes no further attempt to prove prejudice. Appellant's third claim fails.

In sum, we conclude that Conspiracy to Commit Involuntary Manslaughter is a cognizable offense in Pennsylvania, venue was proper in Clarion County, and the trial court did not abuse its discretion in declining to remove Juror No. 4.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/2021