J-S29021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                            :            PENNSYLVANIA
                                            :
               v.                       :
                                            :
                                            :
MARK DARREN SHAFFER         :
                                            :
             Appellant              :       No. 1362 WDA 2021

Appeal from the Judgment of Sentence Entered March 10, 2016
In the Court of Common Pleas of Clearfield County
Criminal Division at CP-17-CR-0000314-2015

BEFORE:    PANELLA, P.J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:          **FILED: SEPTEMBER 26, 2022**

Mark Darren Shaffer (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of one count each of drug delivery resulting in death (DDRD), involuntary manslaughter, recklessly endangering another person, delivery of a controlled substance, and possession of a controlled substance.[1]  Upon careful consideration, we affirm.

The trial court summarized the factual history as follows:

> [On July 18, 2014, Appellant,] … Ryan Rhone [(Rhone or the Victim),] and Tammy McGarvey [(McGarvey)] were camping at the Curwensville Moose Family Center Campground (hereinafter "Campground").  On [that] evening … and into the early morning hours of July 19, 2014, [Appellant] and Rhone went to the bar at

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2506(a), 2504(a), 2705; 35 P.S. §§ 780-113(a)(30) and (a)(16).

the Campground, where Rhone continued consuming alcohol.[1] [Appellant] and Rhone then left the bar and drove back to their campsite. At some point, [Appellant] began to inject heroin, while parked in Rhone's vehicle at the Campground. [Appellant] had ten bags of heroin, and he injected eight of those bags; Rhone consumed one of the bags from [Appellant's] bundle, and [Appellant] kept the remaining bag. Almost immediately after ingesting the heroin, Rhone became unresponsive. [Appellant] alerted McGarvey, who was asleep in the camper, and she began CPR while [Appellant] called 911.

> [1] The testimony revealed that Rhone had consumed approximately six beers prior to going to the bar with [Appellant]. There was no testimony that [Appellant] had been consuming alcohol.

Prior to emergency personnel arriving at the Campground, [Appellant] left the camp site, and McGarvey continued the resuscitation attempts alone. The paramedic and emergency personnel arrived and transported Rhone to Penn-Highlands Clearfield Hospital. Despite medical personnel's numerous attempts to keep Rhone's heart beating at a steady pace, Rhone was ultimately taken off life-support and passed away later that evening on July 19, 2014. An autopsy was performed, and as a result, the Coroner listed the cause of death as a multi-drug overdose.

Trial Court Opinion, 1/14/22, at 1-2 (footnote in original).

In April 2015, the Commonwealth charged Appellant with the abovementioned crimes. The matter proceeded to a jury trial in January 2016. Relevant to this appeal, the Commonwealth successfully introduced into evidence, over Appellant's objection, a forensic toxicology report (NMS report) that was prepared by Denice Teem (Teem) with respect to the Victim. *See* N.T., 1/25/16, at 116-17, 163; *see also id.* at 120 (trial court qualifying Teem as an expert in the field of toxicology, without objection). Teem is a forensic "certifying scientist" employed by National Medical Services Labs (NMS Labs).

*Id.* at 115 (Teem explaining, "a certifying scientist will review all the laboratory data and review the case as a whole from start to finish, … ensuring that all testing procedures were done properly and documented."). On cross-examination, Teem conceded she did not personally perform or observe the forensic tests of the Victim's blood and urine that were referenced in the NMS Labs report. *Id.* at 127.

After the close of evidence, Appellant requested certain jury instructions regarding DDRD and the requisite *mens rea* for a conviction (Appellant's requested instructions).[2] *See* N.T., 1/26/16, at 140-50. The trial court denied Appellant's request, *id.* at 150, and instead read to the jury the standard jury instruction with respect to DDRD, Pa.SSJI (Crim.) 15.2506. *See also* N.T., 1/26/16, at 203-05. The jury convicted Appellant of all counts.

---

[2] The trial court explained:

> In [Appellant's] first proposed instruction, he requested the pre-September 7, 2011[, Pennsylvania suggested] standard instruction for DDRD, [*see* Pa.SSJI (Crim.) 15.2506,] with the addition of the standard instruction for causation in homicide cases. In [Appellant's] second proposed instruction, he requested the post-September 7, 2011 standard instruction for DDRD with the addition of the standard instruction for causation in homicide cases and the culpability instruction required by Section 302(a) and (c) of the Pennsylvania Crimes Code. In [Appellant's] third proposed instruction, [Appellant] requested the post-September 7, 2011 standard instruction for DDRD, with the addition of the standard instruction for causation in homicide cases and the addition of a "probable consequence" instruction required by Section 303(d) of the Pennsylvania Crimes Code.

Trial Court Opinion, 1/14/22, at 4-5; *see also* N.T., 1/26/16, at 140-50.

On March 10, 2016, the trial court sentenced Appellant to 9½ - 20 years in prison.[3]   Appellant filed a post-sentence motion on March 17, 2016. Appellant sought, *inter alia*, judgment of acquittal with respect to his convictions of DDRD and involuntary manslaughter.  The trial court conducted a hearing, and denied Appellant's motion on August 8, 2016.  Appellant timely filed a notice of appeal on August 23, 2016.   This Court subsequently dismissed the appeal for Appellant's counsel's failure to file a brief. ***Commonwealth v. Shaffer***, 1274 WDA 2016 (Pa. Super. Apr. 21, 2017) (*per curiam* order).

On May 15, 2017, Appellant timely filed a *pro se* petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Appellant's claims, as well as the complex procedural history that ensued, are not relevant to this appeal.  ***See***, ***e.g.***, Trial Court Opinion, 1/14/22, at 2-3 (setting forth procedural history, and describing it as "perplexing").  On November 9, 2021, the PCRA court reinstated Appellant's direct appeal rights, *nunc pro tunc*, and directed Appellant to file a notice of appeal within five days of the order. Order, 11/9/21; ***see also*** Trial Court Opinion, 1/14/22, at 3 n.6 (observing, "the Commonwealth stated it was unopposed to reinstating [Appellant's]

---

[3] The court imposed this sentence solely on Appellant's conviction of DDRD, as the remaining convictions merged for sentencing purposes.

direct appeal rights."). Appellant timely filed a notice of appeal.[4] Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents four issues for our consideration:

1. Whether the evidence presented and properly admitted at trial was sufficient to sustain a conviction on the charges of drug delivery resulting in death and involuntary manslaughter[?]

2. Whether the trial court erred when it failed and/or refused to include any culpability requirement for the offense of drug delivery resulting in death, in the court's closing instructions to the jury[?]

3. Whether the trial court erred when it failed and/or refused to include any causation requirement for the offense of drug delivery resulting in death, in the court's closing instructions to the jury[?]

4. Whether the trial court erred when if [*sic*] admitted the NMS lab report (victim's blood test results) into evidence at trial over [Appellant's] objection[?]

Appellant's Brief at 7 (unnecessary capitalization omitted).

In his first issue, Appellant argues the Commonwealth failed to present sufficient evidence for the jury to find him guilty beyond a reasonable doubt of DDRD and involuntary manslaughter. ***See id.*** at 13-16 (unnumbered). Appellant contends the Commonwealth failed to prove he had the requisite

_____

[4] Appellant's notice of appeal incorrectly stated that he was appealing the trial court's August 8, 2016, order denying his post-sentence motions. ***See also*** Appellant's Brief (same). It is settled that an "appeal from an order denying a post-trial motion is procedurally improper because a direct appeal in a criminal proceeding lies from the judgment of sentence." ***Commonwealth v. Gilliam***, 249 A.3d 257, 264 n.5 (Pa. Super. 2021).

*mens rea* to be convicted of DDRD, **see id.** at 13-15 (unnumbered), and further claims, "there is insufficient evidence" that the heroin Appellant gave the Victim at the Campground "was the 'but for' cause of the [V]ictim's death." **Id.** at 15 (unnumbered).

> Our standard of review of a sufficiency of the evidence claim is,
>
> whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt.

**Commonwealth v. Cruz**, 71 A.3d 998, 1006 (Pa. Super. 2013) (citation and brackets omitted).

We first address whether Appellant preserved this claim. To "preserve a sufficiency claim, the Rule 1925(b) statement **must** specify the element or elements upon which the evidence was insufficient." **Commonwealth v. Widger**, 237 A.3d 1151, 1156 (Pa. Super. 2020) (emphasis added); **see also Commonwealth v. Carr**, 227 A.3d 11, 18 (Pa. Super. 2020) (same). Specificity is of "particular importance" in cases where, as in the instant appeal, "the [a]ppellant was convicted of multiple crimes[,] each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." **Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009). If the appellant does not specify such elements, the sufficiency claim is waived. **Commonwealth v. Roche**, 153 A.3d 1063, 1072 (Pa. Super. 2017) (a "Rule 1925(b) statement's failure to specify the allegedly

unproven elements of the crimes result[s] in the waiver of the sufficiency issue."); *see also Carr*, 227 A.3d at 18 (same).

Here, Appellant raised a boilerplate sufficiency challenge that **did not specify the element or elements** of DDRD or involuntary manslaughter. *See* Statement of Matters Complained of on Appeal, 12/10/21, (issue 4). Based upon this deficiency, the trial court determined Appellant waived his sufficiency claims. *See* Trial Court Opinion, 1/14/22, at 8-9 (citing *Carr*, *supra*). Upon review, we are constrained to agree that Appellant has waived his first issue. *See Carr*, *supra*; *Roche*, *supra*.

Appellant addresses his second and third issues together. *See* Appellant's Brief at 16-19. Appellant argues the trial court erred in declining to give the jury his requested instructions, *see* n.2, *supra*, as to DDRD and the requisite *mens rea* for a conviction. *See* Appellant's Brief at 16-19. Appellant contends,

> the delivery of a jury charge that included a statement and explanation of the need to find both reckless conduct associated with the resulting death, and a "but for" causal nexus[,] as requested by [Appellant,] … would have more accurately and clearly stated what the law is.

*Id.* at 19. Appellant claims the trial court's failure "to provide such instruction to the jury … was arbitrary" and "overlooked or ignored" this Court's holding in *Commonwealth v. Kakhankham*, 132 A.3d 986, 988 (Pa. Super. 2015), which we discuss below. Appellant's Brief at 19.

"We review a trial court's refusal to give a specific jury instruction for an abuse of discretion or error of law." *Commonwealth v. Brown*, 200 A.3d 986, 992 (Pa. Super. 2018) (citation omitted). "The trial court has broad discretion in its phrasing of jury instructions so long as the issue is adequately, accurately, and clearly presented to the jury for its consideration." *Id.* (citation and quotations omitted); *see also Commonwealth v. Trippett*, 932 A.2d 188, 200 (Pa. Super. 2007) (a trial court, in issuing jury instructions, "may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." (citation omitted)). Where a trial court's jury instructions "closely track[] the language in the Pennsylvania Standard Criminal Jury Instructions, [] it is presumed that such instructions are an accurate statement of the law." *Commonwealth v. Kerrigan*, 920 A.2d 190, 198 (Pa. Super. 2007) (citing *Commonwealth v. Prosdocimo*, 578 A.2d 1273, 1276-77 (Pa. 1990)).

The trial court rejected Appellant's claim, and provided the following detailed explanation:

> [Appellant] takes particular issue with the fact that [18 Pa.C.S.A. §] 2506[, *i.e.*, the statute defining DDRD,] fails to specifically prescribe culpability regarding the phrase "that a person has died as a result of using the substance." Pa.SSJI (Crim), § 15.2506. [Appellant] argued that the court should have instructed the jury regarding "malice," despite the 2011 amendment to Section 2506. [*See* 18 Pa.C.S.A. § 2506, History.] Prior to September 7, 2011, Section 2506 classified DDRD as third[-]degree murder. Further, as reasoned in *Commonwealth v. Ludwig*, DDRD is specifically "defined by the Legislature as murder of the third degree…. [T]he culpability required for third degree murder [is] malice." [*Ludwig*,] 874 A.2d 623, 630 (Pa.

- 8 -

2005) [(*superseded by statute as stated in* **Commonwealth v. Graham**, 196 A.3d 661, 663 n.4 (Pa. Super. 2018))]. However, following September 6, 2011, this phrase was amended to read "[a] person commits a felony of the first degree…." 18 Pa.C.S. § 2506(a). [This amended statute applied to Appellant, who committed the crimes in July 2014.]

As stated in **Commonwealth v. Kemp**, "a discussion of House Bill 396 (of April 27, 2011), makes it clear that the Legislature deliberately changed the wording to remove the *mens rea* of malice and did so with the intention of making it easier to convict and impose greater penalties on individuals who sold drugs when those drugs resulted in the death of another." 195 MDA 2015, 2015 WL 7187177, at *[10] (Pa. Super. Nov. 16, 2015) [(unpublished memorandum) (footnote omitted)]. Further, the Superior Court of Pennsylvania reasoned [in a published decision] that Section 2506 is not unconstitutionally vague, in that the *mens rea* "required is 'intentionally' doing one of the acts described therein, namely administering, dispensing, delivering, giving, prescribing, selling or distributing any controlled substance or counterfeit controlled substances." **Commonwealth v. Kakhankham**, 132 A.3d 986, 992 (Pa. Super. 2015). The Superior Court went on to consider the purpose of the statute, the severity of the punishment, and its common law origin, and it determined that the statute does not create absolute liability, but instead is governed by Section 302(c) of the Crimes Code, which states that the victim's death must be at least "reckless." **Kakhankham**, 132 A.3d at 995.

Here, the [trial] court did not err by giving the standard jury instruction for DDRD. **The court's instruction did not deviate from the standard instruction** as set out by the Supreme Court of Pennsylvania, **and it clearly stated the law regarding Section 2506**. While the court did not specifically give an instruction for recklessness for DDRD, as prescribed in **Kakhankham**, **the court did give a recklessness instruction in regards to the offense of involuntary manslaughter**. [**See** N.T., 1/26/16, at 205-06]. The recklessness instruction was specifically in reference to [Appellant] giving the Victim heroin that resulted in the Victim's death. This is similar to **Commonwealth v. Samuels**, 778 A.2d 638 (Pa. [] 2001). In **Samuels**, the trial court did not instruct the jury on criminal negligence in regards to homicide by vehicle — DUI related; however, the Superior Court determined that the error, if any at

all, was harmless because **the jury was instructed on criminal negligence in regards to involuntary manslaughter, for which the defendant was found guilty**. *Id.* at 641 [("Under the harmless error doctrine, we will affirm the judgment of sentence in spite of error by the trial court if we conclude beyond a reasonable doubt that the error did not contribute to the jury's verdict."); *see also Commonwealth v. Hairston*, 84 A.3d 657, 671 (Pa. 2014) (harmless error exists where "the record demonstrates [that] … the error did not prejudice the defendant or the prejudice was *de minimis*").] Thus, even if the court erred in failing to give a recklessness instruction for DDRD, the error was harmless because it would not have changed the outcome of the trial, primarily because the jury convicted [Appellant] of involuntary manslaughter, which **required a finding of recklessness**.

[Appellant] also argued that the jury should have been given additional instructions regarding the causation of death. However, as stated in **Kakhankham**, Section 2506 "uses the phrase 'results from,' a concept which is defined also in the Crimes Code…. The statute, therefore, is clear as to the level of causation. It requires a 'but-for' test of causation." **Kakhankham**, 132 A.3d at 992-93. **See also** 18 Pa.C.S. § 303(a) ("Conduct is the cause of a result when: (1) it is an antecedent but for which the result in question would not have occurred; and (2) the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense."). Accordingly, **the statute prescribes the type of culpability required for the offense, so** [**Appellant's**] **proposed additional instructions regarding causation were not appropriate**.

Trial Court Opinion, 1/14/22, at 5-7 (emphasis added; some capitalization altered).

Our review confirms the trial court's cogent assessment of the record and applicable law, and we discern no error of law or abuse of discretion by the court in declining to give Appellant's requested instructions. The court properly instructed the jury regarding the elements of DDRD. **See Brown**,

*supra*; *see also Commonwealth v. Watley*, 699 A.2d 1240, 1245-46 (Pa. 1997) (holding the "mere fact that a defendant may believe that further explanation would have been beneficial does not render a [jury] charge defective."). Accordingly, Appellant's second and third issues do not merit relief.

In his final issue, Appellant claims the trial court erred in admitting the NMS Labs report into evidence, in violation of Appellant's constitutional right to confront his accuser. *See* Appellant's Brief at 19-22. Appellant complains Teem "was not the person who performed the tests [detailed in the NMS Labs report], nor was she present to observe the results, although she testified that a report of the test data was available for her to read and consult." *Id.* at 21; *see also id.* at 20 (arguing Teem's "presentation was 'testimonial' in nature").

Whether Appellant's rights under the Confrontation Clause were violated by the admission of the NMS Labs report is a question of law, for which our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Brown*, 185 A.3d 316, 324 (Pa. 2018) (plurality).

> The Confrontation Clause of the Sixth Amendment, made applicable to the States via the Fourteenth Amendment, provides that "in all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him…." In *Crawford* [*v. Washington*, 541 U.S. 36 (2004)], the Court held that the Sixth Amendment guarantees a defendant's right to confront those "who bear testimony" against him, and defined "testimony" as "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." [*Id.* at 51.] The Confrontation Clause, the High Court explained, prohibits out-of-court testimonial statements by a witness unless the witness is

- 11 -

unavailable and the defendant had a prior opportunity for cross-examination.

***Commonwealth v. Yohe***, 79 A.3d 520, 530-31 (Pa. 2013) (footnotes and some citations omitted).

We review a challenge to the admissibility of evidence as follows:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Johnson***, 42 A.3d 1017, 1027 (Pa. 2012) (citations and quotation marks omitted).

The trial court in the instant appeal opined that it did not err in admitting the NMS Labs report, and no violation of Appellant's confrontation rights occurred. The court reasoned:

> [I]n light of ***Commonwealth v. Yohe***, 79 A.3d 520 (Pa. 2013), the NMS [L]abs report was properly admitted. The Supreme Court of Pennsylvania was faced with a confrontation clause issue [in ***Yohe***], much like the claim asserted by [Appellant] in this case. In ***Yohe***, the Commonwealth presented testimony and an accompanying lab report by Dr. Lee Blum, a toxicologist and assistant laboratory director at NMS Labs. ***Id.*** at 523-24. "As Assistant Lab Director, [Dr. Blum] is responsible for the lab's quality assurance program and client service. As a forensic toxicologist, … he receives the raw data that resulted from the three blood tests, checks the demographic information on the testing data, evaluates the chain of custody, and verifies that the lab technicians performed the appropriate testing." ***Id.*** at 523. Based on the procedure that Dr. Blum testified to, the Supreme Court held the following:

Dr. Blum's expert opinion was contained in the Toxicology Report and was the result of his independent verification of the chain of custody and his independent analysis of the three test results produced by two lab technicians running two types of tests at different times. We agree … that the testimonial document was the certified Toxicology Report prepared and signed by Dr. Blum, and the Commonwealth met its obligation to present the analyst who signed the certificate to testify at trial….

*Yohe*, 79 A.3d at 541.

In this matter, **Teem, the certifying scientist at NMS Labs**, testified that she **authored the report in question**. She further testified at length regarding the processes involved in testing the [Victim's] blood and urine samples, including the types of testing done, the specific procedures of the testing, and who performed the tests. **Teem also testified that she reviewed the raw data from each of the tests, and she verified that the raw data had been reviewed by additional associates to ensure that it was accurate prior to testifying**.[7] For these reasons, the [c]ourt believes that [Appellant's] right to confrontation as to the NMS Lab Report was not violated. Further, there was no error in admitting the NMS lab report because the **Commonwealth presented the author of the report for questioning by** [**Appellant**].

[7] It is important to note that Teem testified that in some instances (not in this case) she does not "review every single piece of raw data" before she signs a report, but that she always has access to it for review in the event something does not appear to be accurate.

Trial Court Opinion, 1/14/22, at 7-8 (footnote 7 in original; emphasis added).

Upon review, we agree with the trial court's reasoning, which is supported by the record and the law. Contrary to Appellant's claim and consistent with *Yohe*, the Commonwealth produced Teem to testify and submit to cross-examination; this satisfied Appellant's confrontation rights,

even though the Commonwealth did not present testimony from the NMS Labs

technicians who performed the tests. The record reflects that Teem's report,

like the report in **Yohe**,

> did not simply parrot another analyst; rather, [Teem] was involved with reviewing all of the raw testing data, evaluating the results, measuring them against lab protocols to determine if the results supported each other, and writing and signing the report. Indeed, it was [Teem] who ultimately certified [the Victim's toxicology report results,] and it was [Teem] who was cross-examined as to this conclusion.

**Yohe**, 79 A.3d at 541 (internal citation omitted).

For the above reasons, we discern no abuse of discretion or error by the

trial court, and affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2022

- 14 -