J-S30003-22, J-S30004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMAL ABDUL KEYS | |
| Appellant | No. 2535 EDA 2021 |

Appeal from the Judgment of Sentence Entered November 10, 2021
In the Court of Common Pleas of Chester County
Criminal Division at No: CP-15-CR-0001966-2019

---

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMAL ABDUL KEYS | |
| Appellant | No. 2536 EDA 2021 |

Appeal from the Judgment of Sentence Entered November 10, 2021
In the Court of Common Pleas of Chester County
Criminal Division at No: CP-15-CR-0003148-2019

BEFORE:  STABILE, J., MCCAFFERY, J. and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:          **FILED OCTOBER 24, 2022**

---

[*] Retired Senior Judge assigned to the Superior Court.

Appellant, Jamal Abdul Keys, appeals from his aggregate judgment of sentence in the above-captioned cases[1] of eighteen to thirty-six years' imprisonment for drug delivery resulting in death ("DDRD"), criminal conspiracy, and two counts each of criminal use of a communication facility and possession of controlled substances with intent to deliver ("PWID").[2] We affirm.

On April 1, 2019, Drew Martin, the victim, was discovered deceased from an overdose of fentanyl and morphine (heroin metabolite) at his residence in Willistown Township, Chester County. A download of his cellphone indicated that he had arranged purchases of heroin on March 27 and 29, 2019 by contacting a phone number listed as "Mal." Based upon text messages found on the phone, police concluded that "Mal" delivered heroin to the victim at his parents' residence in East Pikeland Township on March 27, 2019. In addition, text messages and GPS location records indicated that the victim bought heroin from "Mal" at a Burger King at 8th Street and Lehigh Avenue in Philadelphia on March 29, 2019. The victim's roommate, Will Svitak, informed police that the victim had a heroin addiction, and that the only person from whom he received heroin was an individual named "Jamal" from Philadelphia.

_____

[1] These cases were tried together in a jury trial in the Court of Common Pleas of Chester County. Pursuant to Pa.R.A.P. 513, we consolidate these appeals for disposition.

[2] 18 Pa.C.S.A. §§ 2506, 903, 7512 and 35 P.S. § 780-113(a)(30), respectively.

On April 3, 2019, Detective Thomas Hyland of the Phoenixville Borough[3] Police Department contacted the number listed as "Mal" in the victim's cellphone. Posing as the victim, the detective arranged a controlled buy of heroin from Mal to be delivered that day to the residence of the victim's parents. After arranging the purchase, the detective received a call from another phone number by an individual claiming to be Mal's brother, who indicated that he was en route with the requested narcotics. This individual, later identified as Akiba Norton, arrived at the designated location and was arrested. Norton was in possession of the drugs that the detective had asked for in the exchange. Norton's cellphone also included a contact, "Mal New," that matched the number listed as "Mal" in the victim's phone. A police review of Norton's known associates generated Appellant's name, and Norton identified Appellant as a family member. Detective Hyland contacted Appellant's probation officer in Philadelphia and learned that the phone number supplied by Appellant to his probation officer on March 20, 2019 was identical to the number saved as "Mal" in the victim's phone and "Mal New" in Norton's phone.

On April 16, 2019, Detective Hyland and Phoenixville Borough Sergeant Brian MacIntyre arrested Appellant in Philadelphia and transported him back to Phoenixville in an unmarked police vehicle. During the drive, Detective Hyland gave some, but not all, of the warnings required under *Miranda v.*

---

[3] Phoenixville Borough is in Chester County.

*Arizona*, 384 U.S. 436 (1966). The detective gave Appellant *Miranda* warnings from memory, advising him of his right to remain silent, that anything he said may be used against him, and that he had the right to have an attorney present during questioning. The detective failed, however, to inform Appellant that he had the right to stop questioning at any time. Nevertheless, Appellant invoked his right to remain silent at some point during the interrogation, although the precise moment was unclear. Upon arriving at the Phoenixville Police Department, Appellant signed a form consenting to the search of his cell phone.

Appellant filed a motion to suppress statements that he made during the drive back to Phoenixville as well as evidence seized from his cell phone at the Phoenixville Police Department. In the same motion, Appellant requested a change of venue from Chester County to Philadelphia County. On July 8, 2020, the court held an evidentiary hearing on Appellant's motion to suppress. On July 31, 2020, the court granted Appellant's motion to suppress the statement he made during the drive back to Phoenixville due to Detective Hyland's improper *Miranda* warnings. The court denied Appellant's motion to suppress the evidence seized from his cell phone and his motion for change of venue.

Appellant was charged at No. 1966-2019 ("Case I") with crimes relating to the victim's death and at No. 3148-2019 ("Case II") with crimes relating to the attempted sale of controlled substances several days after the victim's death. The Commonwealth filed a notice consolidating these cases for trial.

- 4 -

On September 8, 2020, Appellant filed a motion to sever these cases, claiming that they were distinct from one another in geographic location and time. On October 7, 2020, the court denied Appellant's motion to sever.

Norton also was charged with various offenses, and he entered a guilty plea in October 2019.

On July 22, 2021, at the conclusion of a four-day trial, the jury found Appellant guilty of the charges described above. On November 10, 2021, the court imposed sentence. Appellant filed timely appeals at both caption numbers, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues in this appeal:

1. Did the Trial Court commit reversable error in denying Appellant's motion to suppress the warrantless search of his cellular phone?

2. Did the Trial Court commit reversible error in denying Appellant's motion for change of venue?

3. Did the Trial Court commit reversible error in granting the Commonwealth's motion to consolidate two cases, thus enabling the jury to hear prior bad acts testimony?

4. Did the Trial Court commit reversible error by violating Appellant's right to an open and public trial when it excluded members of Appellant's family from *voir dire*?

5. Did the Trial Court commit reversible error in denying Appellant's motion for mistrial after a witness testified to Appellant's probationary status?

6. Did the Trial Court commit reversible error in allowing the Commonwealth to offer hearsay testimony as to a co-defendant's guilty plea violating Appellant's right to confrontation?

7. Did the Trial Court commit reversible error by permitting hearsay text messages and transcripts into evidence without proper authentication?

8. Did the Trial Court commit reversible error in that evidence presented was insufficient to enable the fact finder to find every element of the crimes beyond a reasonable doubt?

Appellant's Brief at 5-6.

In his first argument, Appellant contends that the trial court erred in denying his motion to suppress evidence seized during the post-arrest search of his cell phone. Appellant complains that his consent to the search was invalid because the defective *Miranda* warnings by Detective Hyland during the drive to Phoenixville was "an infringement on [his] constitutional rights" that "negatively influenced his ability to subsequently consent to a search of his phone moments later." Appellant's Brief at 20. We conclude that the trial court correctly determined that Appellant knowingly, voluntarily and intelligently consented to the search of his phone.

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion

> is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Heidelberg*, 267 A.3d 492, 498-99 (Pa. Super. 2021) (*en banc*).

The trial court made the following findings of fact:

Once [Appellant] was transported to the Phoenixville Police Department on April 16, 2019, he was taken to the processing room where Detective Hyland requested [Appellant]'s consent to search the cellphone which had been in his possession at the time of arrest. [Appellant] agreed, and signed a document entitled "Consent to Search (Cellular Telephone)" (admitted as Commonwealth's Exhibit 1 at the July 8, 2020 hearing) authorizing Detective Hyland to "conduct a complete search" of his cellphone. This interaction may have been audio and video recorded, but no such recording was introduced at the hearing. The consent form reads as follows:

> *(portions in italics are hand-written into blank sections of the printed form):*
>
> I, Jamal Keys have been informed of my constitutional right to refuse to have search made of the cellular telephone(s) owned by me and/ or under my care (identified below) without a search warrant. However, knowing my right to refuse consent to such a search, I hereby authorize Det. Hyland - Phoenixville PD, their agents, or other investigative agencies assisting them in this investigation, to conduct a complete search of the following cellular telephone(s):
>
> *[Brand, model, and telephone number of Defendant's cellphone]*
>
> The above-referenced officer/ agencies are authorized to take the above-stated cellular telephone(s) and examine the telephone(s) at a different location for any evidence of criminal activity. This written permission is given by me to the above-named person(s) voluntarily and without threats or promises of any kind at 5:00 PM on this 16th day of April, 2019.
>
> *[Signatures and printed names of Defendant and Detective Hyland]*

Order, 7/31/20, at 6.

The Fourth Amendment to the United States Constitution protects individuals, their homes, their papers, and their effects and possessions from "unreasonable searches and seizures." U.S. Const. amend. IV. For a search to be lawful, police must first obtain a warrant, supported by probable cause, from a neutral and detached magistrate. *Commonwealth v. Loughnane*, 173 A.3d 733, 741 (Pa. 2017). "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000). One of the limited exceptions to the warrant requirement is a consensual search. *Id.* "[W]e have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno*, 500 U.S. 248, 250–51 (1991). Although a warrantless, but consensual, search is constitutionally permissible, obtaining consent is an "investigative tool" utilized by law enforcement. *Strickler*, 757 A.2d at 892. It allows police to do what otherwise would be impermissible without a warrant. *Commonwealth v. Cleckley*, 738 A.2d 427, 429 (Pa. 1999).

Since a consent search is in derogation of the Fourth Amendment, it will not be valid unless it complies with several strict limitations. First, consent must be voluntarily given during a lawful police interaction. For a finding of voluntariness, the Commonwealth must establish that the consent given by the defendant "is the product of an essentially free and unconstrained choice

– not the result of duress or coercion, express or implied, or a will overborne – under the totality of the circumstances." ***Commonwealth v. Smith***, 77 A.3d 562, 573 (Pa. 2013). The following factors determine whether consent is voluntary: 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search. ***Commonwealth v. Kemp***, 961 A.2d 1247, 1261 (Pa. Super. 2008).

The trial court reasoned:

> Based upon the totality of the circumstances, we find that [Appellant] voluntarily consented to the search of his cellphone . . . [S]ome of [the] factors [delineated above] (i.e., "whether the person has been told that he is free to leave") do not apply to this precise factual situation. While [Appellant] was in custody, that custody was pursuant to a valid arrest warrant. He was not subjected to "police excesses" or "duress or coercive tactics" in order for consent to be given. [Appellant] was advised of his right to refuse to consent, and there is no indication that [Appellant] did not understand these rights. Indeed, he specifically completed and signed a form that recognized he understood and waived those rights. Both Detective Hyland and Sergeant MacIntyre described [Appellant] as "cooperative" during the entire interaction on April 19, 2019. The interrogation and the consent to search the phone were two separate incidents that occurred in two different physical locations, and the fact that the former must be suppressed does not automatically stain the latter. The phone search is not necessarily the "fruit" of the car interrogation's "poisonous tree," as the police would likely have requested [Appellant]'s consent to search the phone regardless of whether

- 9 -

they had questioned him on the ride from Philadelphia to Phoenixville.

Order, 7/31/20, at 7. We agree with this analysis. We add that there is no evidence that Appellant's consent to the search of his phone was coercive. Nothing in the record indicates that the police officers acted inappropriately or threateningly or that Appellant's written consent to the search was involuntary.

An alternative ground exists for upholding the trial court's ruling that it did not expressly mention in its order. *See In re A.J.R.-H.*, 188 A.3d 1157, 1176 (2018) (appellate court may affirm on any ground where correct basis for the ruling is clear upon the record and pertinent facts have been resolved by court of original jurisdiction).

In *United States v. Patane*, 542 U.S. 630 (2004), a plurality of the United States Supreme Court held that when a criminal defendant does not receive *Miranda* warnings during a custodial interrogation, his custodial statement must be suppressed but not any physical evidence recovered as a result of the statement. Both our Supreme Court and this Court have followed *Patane*. *See Commonwealth v. Bishop*, 217 A.3d 833, 835-36 (Pa. 2019); *Commonwealth v. Abbas*, 862 A.2d 606, 611 (Pa. Super. 2004). The *Abbas* court observed, "Our reading of *Patane* indicates that the doctrine is not applicable to non-testimonial or derivative physical evidence absent an actual coerced statement, and the exclusion of Abbas' statement was a

'complete and sufficient remedy' for the ***Miranda*** violation." ***Id.***, 862 A.2d at 611.

In this case, the trial court held that Detective Hyland gave defective ***Miranda*** warnings but held the police did not use any coercive tactics. Order, 7/31/20, at 7. Thus, under ***Bishop*** and ***Abbas***, the proper remedy was the remedy selected by the trial court: suppression of Appellant's custodial statement but no suppression of the contents of his cell phone, even if these contents were recovered as a result of his statement.

For these reasons, Appellant's first argument fails.

In his second argument, Appellant maintains that the trial court abused its discretion in denying Appellant's motion for change of venue from Chester County to Philadelphia County, because the sale of drugs to the victim took place in Philadelphia, and the Commonwealth could not demonstrate where the victim ingested the drugs. Appellant's Brief at 24 (suggesting that the victim could have taken the drugs in Philadelphia or while driving back to Chester County). We conclude that the trial court acted within its discretion by denying Appellant's motion.

Appellate review of a venue decision "turn[s] on whether the trial court's factual findings are supported by the record and its conclusions of law are free of legal error." ***Commonwealth v. Gross***, 101 A.3d 28, 33-34 (Pa. 2014). "Venue in a criminal action properly belongs in the place where the crime occurred." ***Id.*** at 33. When venue is proper in more than one county, the

trial court should balance the convenience of each venue to the parties. ***Commonwealth v. Arrington***, 247 A.3d 456, 462 (Pa. Super. 2021); ***Commonwealth v. Graham***, 196 A.3d 661, 665 (Pa. Super. 2018).

Although there is no exclusive provision which sets forth the statutory grounds for establishing venue in a particular county within Pennsylvania, "our courts frequently [look to 18 Pa.C.S.A. § 102] in determining the proper county in which a criminal trial should take place." ***Commonwealth v. Field***, 827 A.2d 1231, 1233 (Pa. Super. 2003). Section 102 provides in relevant part that an individual may be convicted in a county if, among other things, his "conduct which is an element of the offense or the result of which is such an element occurs within the [county]." 18 Pa.C.S.A. § 102(a)(1). Thus, under Section 102, venue is proper in a county where either an element of an offense or a required result occurs. An "element of an offense" consists of conduct which is "included in the description of the forbidden conduct in the definition of the offense." 18 Pa.C.S.A. § 103. Section 102 further provides that in the case of a homicide, "either the death of the victim ... or the bodily impact causing death constitutes a result within the meaning of paragraph (a)(1) of this section[.]" 18 Pa.C.S.A. § 102(c).

In ***Graham*** and ***Arrington***, we addressed questions of venue when, as here, the defendant was charged with DDRD. In ***Graham***, the defendant traveled with two companions from Centre County to Clinton County to obtain heroin. The defendant purchased twenty-two bags of what he believed was

heroin, then gave fourteen of those bags to one of his companions. Upon her return to Centre County, the companion ingested several bags of the substance, which turned out to be fentanyl, and died of an overdose. Prosecutors charged the defendant in Centre County (where the victim died) with DDRD and other crimes. The defendant filed a motion to transfer venue, asserting that the case should proceed in Clinton County. The trial court granted the motion, reasoning that although the victim died in Centre County, the defendant's only overt act occurred in Clinton County. On appeal, we vacated the trial court's order. We observed that under Section 102, "venue is proper in a county where either an element of an offense or a required result occurs." *Id.*, 196 A.3d at 664. Regarding the DDRD charge, we recognized "two principal elements: (1) an intentional conveyance of any controlled substance or counterfeit controlled substance, and (2) death resulting from the use of the conveyed substance." *Id.* at 665. Thus, under the facts of the case, we concluded that venue was proper either in Clinton County, where the defendant had conveyed a controlled substance to his companion, or in Centre County, where the companion had ingested the controlled substance and died. *Id.* Since venue was proper in either county, "it was incumbent upon the trial court to assess the convenience of the parties in going forward with the proceedings in either Clinton County or Centre County." *Id.* Accordingly, we remanded the case for further proceedings in which "the convenience of the parties can be assessed." *Id.*

*Arrington* is almost identical to the present case. The defendant sold heroin laced with fentanyl to the victim in Allegheny County, and the victim died of a fentanyl overdose in Clarion County. Following the victim's death, a confidential informant for a Clarion County detective made two purchases of heroin laced with fentanyl from the defendant in Allegheny County. The defendant was charged with DDRD in Clarion County, and the trial court denied his motion to transfer venue to Allegheny County. We held that the court properly determined that venue was proper both in Allegheny County, where the defendant sold the narcotics, and in Clarion County, where the victim died. We further held that the court correctly determined that Clarion County was the more convenient venue for trial, because the majority of evidence and witnesses were in Clarion County, the victim resided in Clarion County and died there, the victim's autopsy was conducted in Clarion County, the lead investigator and coordinator of the controlled buys was a Clarion County detective, and most if not all witnesses for the Commonwealth resided in Clarion County. *Id.*, 247 A.3d at 463.

In the present case, the trial court denied Appellant's motion to transfer venue for the following reasons:

> The decedent ingested the narcotics and died in Chester County, fulfilling a "required result" of the crime of [DDRD]. Moreover, as the Commonwealth noted at the hearing, the investigation in this case was conducted entirely by Chester County agencies, with little or no involvement by the Philadelphia authorities.

- 14 -

Order, 7/31/20, at 2. We agree. We further observe that as in **Arrington**, (1) the victim's autopsy took place in Chester County, **see** Commonwealth Exhibit 7 (autopsy report), (2) Detective Hyland, the investigator in this case who coordinated the controlled buy, is a Phoenixville Borough (Chester County) detective, and (3) many of the Commonwealth witnesses reside in Chester County. Therefore, the trial court properly denied Appellant's motion for transfer of venue.

In his third argument, Appellant contends that the trial court abused its discretion by denying his pretrial motion to sever Case I from Case II. In Case I, Appellant was charged with DDRD, PWID and criminal use of a communication facility for the March 29, 2019 delivery of a controlled substance to the victim. In Case II, Appellant was charged with PWID, conspiracy and criminal use of a communication facility for the drug delivery conducted by Norton on April 3, 2019.

The decision of whether to sever offenses for trial is within the discretion of the trial court, and we will not reverse this decision absent a manifest abuse of that discretion or a showing of prejudice and clear injustice to the defendant. **Commonwealth v. Wholaver**, 989 A.2d 883, 898 (Pa. 2010). We hold that the trial court acted within its discretion by denying Appellant's motion.

Pennsylvania Rule of Criminal Procedure 582 provides in relevant part:

(1) Offenses charged in separate indictments or informations may be tried together if:

- 15 -

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582.

The trial court gave the following explanation for denying Appellant's motion to sever:

The admissibility of each offense in separate trials falls under "prior bad act" evidence per Pa.R.E. 404(b), which states in relevant part:

(b) Crimes, Wrongs or Other Acts

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b). In addition, evidence of other crimes may be introduced where such evidence was part of the chain or sequence of events which became part of the history of the case in question and formed part of the natural development of the facts. *Commonwealth v. Spotz*, 756 A.2d 1139, 1152 (Pa. 2000).

In this case, the evidence of each of the two offenses would be admissible in the trial of the other, based upon the above "history of the case" exception to Pa.R.E. 404(b) addressed in *Spotz*. The investigation that led to the April 3, 2019 drug delivery by Mr. Norton allegedly on [Appellant's] behalf, as charged in [Case I],

- 16 -

was initiated as a result of [the victim]'s death. Detective Hyland obtained the phone number allegedly connected to [Appellant] from [the victim]'s cellphone, and indeed assumed the decedent's identity when arranging the drug sale. The April 3, 2019 drug sale, combined with further investigation, led police to determine that [Appellant] allegedly provided the drugs to [the victim] that caused his death -- the crime charged in [Case II]. Moreover, the affidavits of probable cause in these two cases, introduced as Exhibits C-1 and C-2 at the hearing on September 22, 2020, parallel one another. Both affidavits commence with the circumstances of [the victim]'s death, and the police investigation into the decedent's cellphone that led Detective Hyland to attempt to purchase drugs from "Mal." The affidavit in [Case I] terminates after Mr. Norton's arrest, while the affidavit in [Case II] provides more detailed information about the precise scientific causes of [the victim]'s demise. These two cases therefore constitute a single "chain or sequence of events" that permits, if not requires, the admission of evidence of one in a trial for the other. The first prong of the above standard for consolidation has therefore been met.

Second, the court must determine whether the facts of these two cases "capable of separation by the jury so as to avoid danger of confusion[.]" We find that they are. These two cases arise out of two separate drug sales to different individuals at distinct times and locations. The first, on March 29, 2019, was to [the victim] at a Burger King, located at 8th Street and Lehigh Avenue in the City of Philadelphia. The heroin obtained at this sale allegedly caused [the victim]'s death. The second transaction between Detective Hyland and Mr. Norton occurred on April 3, 2019 at [the address of the victim's parents], East Pikeland Township, Chester County. These two incidents do not share participants, dates, or locations. Indeed, [Appellant] was not even physically present at the second transaction, and the Commonwealth alleges that Mr. Norton conducted the delivery on his behalf. The numerous distinguishing factors between these events are sufficient to permit a jury to separate them.

Finally, [Appellant] has not presented any evidence that he would be unduly prejudiced by these cases being tried together. The sequence of events set forth above inextricably links the facts of these two cases, and the same facts would be presented to a jury regardless of the court's decision on joinder. [Appellant] has not

- 17 -

sufficiently articulated grounds for undue prejudice that would prevent these cases from being tried simultaneously.

Order, 10/7/20, at 3-4.

We agree with the trial court's cogent analysis, and we conclude that its decision to deny severance was a proper exercise of discretion.

In his fourth argument, Appellant contends that the trial court violated his Sixth Amendment right to an open and public trial by ordering a child member of Appellant's family removed from the courtroom prior to swearing in the jury at the beginning of trial. Appellant waived this issue.

The record demonstrates that the court directed a family member to remove the child. The court explained that this step was necessary because the child might pose a distraction during the opening instructions that the court was about to give the jury. The family member removed the child without any objection by Appellant. N.T., 7/19/19, at 3-4.

Failure to raise a contemporaneous objection during trial waives that claim on appeal. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *Commonwealth v. Baumhammers*, 960 A.2d 59, 73 (Pa. 2008) (to preserve issue for appellate purposes, party must make timely and specific objection to ensure trial court has opportunity to correct alleged error). Appellant waived any objection to the order to remove the child from the courtroom due to his failure to raise any contemporaneous objection to the order.

In his fifth argument, Appellant contends that the trial court erred by failing to grant his motion for mistrial after a Commonwealth witness testified during trial that Appellant was on probation. We disagree.

The witness testified as follows during direct examination:

Q: Mr. Blanchard, are you employed with the City of Philadelphia?

A: Yes, correct.

Q: And as a part of your job as an employee with the City of Philadelphia, do you have occasion to come into contact with an individual by the name of Jamal Keys?

A: Yes.

Q: As a part of your job, does Mr. Keys have to keep in contact with you?

A: Yes. Jamal Keys, he has to maintain contact with the Adult Probation Department on a monthly basis.

N.T., 7/21/21, at 46. Defense counsel moved for a mistrial. The court denied the motion but instructed the jury to "disregard the witness's reference to any obligation that [Appellant] may have with the Adult Probation Department of Philadelphia on a monthly basis." *Id.* at 48.

The Rules of Criminal Procedure provide, "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim.P. 605(B). We review the denial of a motion for mistrial for abuse of discretion. *Commonwealth v. Kerrigan*, 920 A.2d 190, 199 (Pa. Super.

- 19 -

2007). "The central tasks confronting the trial court upon the making of the motion were to determine whether misconduct or prejudicial error actually occurred, and if so, to assess the degree of any resulting prejudice." *Id.* Additionally, with regard to a motion for mistrial due to a reference to past criminal behavior, "[t]he nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." *Id.* Furthermore, "[a] mistrial is not necessary where cautionary instructions are adequate to overcome prejudice." *Commonwealth v. Goods*, 265 A.3d 662, 665 (Pa. Super. 2021).

In *Kerrigan*, the trial court denied a request for a mistrial when a Commonwealth witness stated that the defendant had been in prison in New Jersey. Noting that the Commonwealth did not intentionally elicit the information, and that the witness made only a single reference to the fact that the defendant had been in prison, we held that "[t]his singular, passing reference to a prior conviction is simply not sufficient to show that the trial court abused its discretion in denying Kerrigan's motion for a mistrial." *Id.* at 200.

Here, similar to *Kerrigan*, a Commonwealth witness made a single fleeting reference to Appellant's probationary status. The Commonwealth did not intentionally elicit this testimony. The prosecutor merely asked whether Appellant "ha[s] to keep in touch with you," not whether he was on probation.

Moreover, the trial court promptly cautioned the jury to disregard this lone passing reference to Appellant's probationary status. Under these circumstances, the trial court acted within its discretion by denying Appellant's motion for a mistrial.

In his sixth argument, Appellant insists that the trial court abused its discretion by permitting a Commonwealth witness, a former district attorney, to testify about the facts that gave rise to the guilty plea of Appellant's cohort, Norton. The witness also testified that Norton agreed to these facts as part of his guilty plea. Before and after this testimony, Appellant's attorney objected solely on the ground of hearsay. N.T., 7/21/21, at 38-42. In his appellate brief, Appellant complains that the admission of his testimony violated his Confrontation Clause rights under the Sixth Amendment, an objection Appellant did not raise during trial.

Appellant waived his Confrontation Clause argument because defense counsel only raised a hearsay objection to the Commonwealth witness's testimony during trial. Hearsay is a matter of Pennsylvania evidentiary law, while the Confrontation Clause is a matter of constitutional law and therefore is a separate issue. Raising a hearsay objection is not equivalent to raising a Confrontation Clause objection. *See Commonwealth v. Hogan*, 2021 WL 5822818, *6 (Pa. Super., Dec. 7, 2021) (unpublished memorandum)[4] ("It is

_____

[4] This Court may cite its unpublished non-precential memoranda filed after May 1, 2019 for their persuasive value. Pa.R.A.P. 126(b).

- 21 -

untenable to suggest, as Appellant does in his appellate brief, that raising a hearsay objection necessarily raises a Confrontation Clause claim by implication. ***Commonwealth v. Cash***, 137 A.3d 1262, 1275 (Pa. 2016) (where defendant raises an objection before trial court on specific grounds, only those grounds are preserved for appeal)").

In Appellant's seventh argument, he alleges that the court abused its discretion when it allowed the Commonwealth to admit text messages without proper authentication. He further alleges that a text message found on a phone in his possession at the time of his arrest was inadmissible hearsay. We disagree.

Prior to trial, the Commonwealth filed notice pursuant to Pa.R.E. 404(b)(3) of its intent to introduce evidence of a drug transaction between the victim and Appellant on March 27, 2019. A download of the victim's cellphone after his death indicated that he had arranged the purchase of heroin on March 27, 2019 by contacting a phone number listed as "Mal," xxx-xxx-5462,[5] which the Commonwealth asserted belonged to Appellant. In the text messages between the victim and Mal, the victim arranged a drug delivery to his home at 330 Frog Hollow Road, East Pikeland Township, Chester County. Following this transaction, the victim complained to Mal that the narcotics

_____

[5] We identify only the last four digits of this number not knowing if the number still is subscribed to another customer, and if so, to protect the customer's privacy.

delivered to him on March 27 were not potent enough. When police, posing as the victim, contacted Mal and arranged another drug delivery on April 3, 2019, the dealer was instructed to return to the same 330 Frog Hollow Road address, leading to Norton's arrest.

The court permitted introduction of this evidence to establish the chain of events that led to the victim's death. During trial, Appellant objected that these text messages lacked proper authentication. Appellant argued that the Commonwealth failed to provide a sufficient basis upon which to conclude that Appellant was actually the individual who sent the text messages to the decedent from the phone number ending in 5462. Appellant also objected, on grounds of hearsay, to a text on March 7, 2019, prior to the sale to the decedent, stating, "Yo, cuz. I'm up. Did I leave my phone in the car?" N.T. 7/21/21, at 124.

Pennsylvania Rule of Evidence 901 provides in relevant part:

(a) In General. Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

(b) Examples. The following are examples only--not a complete list--of evidence that satisfies the requirement:

\* \* \*

(11) Digital Evidence. To connect digital evidence with a person or entity:

(A) direct evidence such as testimony of a person with personal knowledge; or

(B) circumstantial evidence such as:

(i) identifying content; or

(ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901.[6]

In recent years, we have issued a series of opinions pertaining to authentication of text messages. *See Commonwealth v. Orr*, 255 A.3d 589 (Pa. Super. 2021) (collecting cases). These decisions demonstrate that multiple factors help establish authentication of text messages, including (1) direct or circumstantial evidence as to the identity of who authored the text sent, *Commonwealth v. Mosley*, 114 A.3d 1072, 1083 (Pa. Super. 2015); (2) testimony from the persons who sent or received the text messages, *Commonwealth v. Mangel*, 181 A.3d 1154, 1162 (Pa. Super. 2018) (recognizing recipient or sender testimony as direct evidence of authenticity); (3) contextual clues in texts concerning the crime charged tending to reveal the sender's identity, *Commonwealth v. Murray*, 174 A.3d 1147, 1156-57 (Pa. Super. 2017); (4) the defendant's possession of the cell phone containing the text messages, *id.* at 1157; (5) the defendant's admission to owning the cell phone, *id.*; (6) time and date of messages sent in relation to the crime charged, *Commonwealth v. Wright*, 255 A.3d 542, 551 (Pa. Super. 2021);

---

[6] Pa.R.E. 901(b)(11) became effective on October 1, 2020, prior to trial in this case.

(7) evidence establishing a distinct characteristic of the message, *Commonwealth v. Talley*, 236 A.3d 42, 60 (Pa. Super. 2020), *appeal granted on other grounds*, 250 A.3d 468 (Pa. 2021), *aff'd*, 236 A.3d 42 (Pa. 2021); and (8) no evidence of a third party having access to the cell phone, *Orr*, 255 A.3d at 601. All of these factors fit within the parameters of Rule 901(b)(11).

Here, the Commonwealth presented substantial circumstantial evidence that Appellant authored the text messages. Norton had the 5462 number listed on both of his cell phones under the contact "Mal." Appellant's probation officer testified that Appellant provided him the 5462 number as his primary contact number. Commonwealth Exhibit C-33, a chart of the toll records for the 5462 number, showed the common contacts between the 5462 number and the phone seized from Appellant during his arrest, Appellant's use of these same contact phone numbers while in prison in the month before trial, and use of the 5462 number to contact Appellant's girlfriend on two relevant dates, March 27 and 29 of 2019. Accordingly, the Commonwealth met its burden of authenticating these text messages.

Equally meritless is Appellant's hearsay challenge to the text message on March 7, 2019, prior to the sale to the decedent, "Yo, cuz. I'm up. Did I leave my phone in the car?" N.T. 7/21/21, at 124. Appellant possessed the phone that contained this text and consented to the search of the phone, facts that establish he authored this message. *Murray*, 174 A.3d at 1156-57.

Since he authored the message, it was admissible as an admission of a party opponent under Pa.R.E. 803(25).

In his eighth and final argument, Appellant contends that the evidence was insufficient to sustain his convictions. We disagree.

The standard we apply in reviewing the sufficiency of the evidence is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jackson*, 215 A.3d 972, 980 (Pa. Super. 2019).

The jury found Appellant guilty of two counts of PWID, one for the delivery of drugs to the victim on March 29, 2019 in Philadelphia (the drugs that eventually resulted in the victim's death) and one for the delivery of drugs by Norton to Detective Hyland on April 3, 2019. Viewed in the light most favorable to the Commonwealth, the evidence is sufficient to sustain both convictions. The evidence establishes that Appellant himself delivered the

drugs to Appellant on March 29, 2019, and that Appellant acted as an accomplice to Norton's delivery of drugs to the detective on April 3, 2019.

To convict an accused of PWID under 35 P.S. § 780–113(a)(30), the Commonwealth "must prove that he both possessed the controlled substance and had an intent to deliver that substance." ***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011), *aff'd by equally divided court*, 106 A.3d 705 (Pa. 2014). The Commonwealth can establish all elements of PWID by circumstantial evidence. ***Commonwealth v. Bricker***, 882 A.2d 1008, 1015 (Pa. Super. 2005).

The Crimes Code defines accomplice liability, in relevant part, as follows:

> (a) General rule.—A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.
>
> (b) Conduct of another.—A person is legally accountable for the conduct of another person when:
>
> * * *
> (3) he is an accomplice of such other person in the commission of the offense.
>
> (c) Accomplice defined.—A person is an accomplice of another person in the commission of an offense if:
>
> (1) with the intent of promoting or facilitating the commission of the offense, he:
>
> > (i) solicits such other person to commit it; or
> >
> > (ii) aids or agrees or attempts to aid such other person in planning or committing it . . .

18 Pa.C.S.A. § 306.  Further,

> a person cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene.  There must be some additional evidence that the person intended to aid in the commission of the underlying crime, and then aided or attempted to aid.  For purposes of accomplice liability, no agreement is required, only aid.  With regard to the amount of aid, it need not be substantial so long as it is offered to the principal to assist him in committing or attempt to commit the crime.  The least degree of assistance in committing the offense is adequate to sustain the finding of responsibility as an accomplice.

*Commonwealth v. Adams*, 39 A.3d 310, 324 (Pa. Super. 2012).

In *Commonwealth v. Murphy*, 844 A.2d 1228 (Pa. 2004), the Supreme Court addressed whether the defendant (Murphy) could be found guilty as an accomplice based upon his transaction with an undercover officer. Murphy's acts included screening a potential "customer" (the undercover officer) to ensure that he was not a police officer looking to buy drugs, calling for his co-defendant (Rivas) to come across the street after determining the "customer" was not a police officer, verifying that the "customer" was not a police officer to Rivas, remaining with the "customer" while Rivas retrieved the drugs for sale, and seeking payment for his services in drugs or cash once the drug transaction was complete.  The Court found these actions by Murphy were sufficient for the jury to find him guilty as an accomplice to the drug delivery conducted by Rivas:

> [T]he jury could have found that Murphy intended to aid in the transfer of drugs by Rivas to Trooper Longenecker based on the evidence that Murphy called out to Rivas after the trooper approached him, confirmed to Rivas that the trooper was not a

- 28 -

police officer, stayed with the trooper while Rivas got drugs, and requested compensation from the trooper for his efforts. These acts were clearly sufficient for the jury to infer that Murphy wanted to actively assist Rivas in delivering drugs to the trooper so that he could seek drugs from the trooper afterwards . . .

We also find that the evidence showed that Murphy aided Rivas, the principal drug deliverer, in transferring drugs to the trooper based on the evidence that he screened the trooper by asking him if he was a police officer before calling Rivas, and that he then confirmed for Rivas that the trooper was okay to sell drugs to. While this evidence taken alone may have been insufficient for the jury to find that Murphy was aiding Rivas, rather than the trooper, we find that this evidence, when considered with the evidence that Rivas knew upon being called by Murphy that the trooper was interested in buying drugs, and that Rivas also immediately asked Murphy if the trooper was a "cop," was sufficient for the jury to find beyond a reasonable doubt that Murphy was acting on Rivas' behalf when he questioned the trooper about his status and then conveyed the trooper's answer to Rivas.

*Id.*, 844 A.2d at 1237.

With regard to Appellant's first PWID conviction, the evidence establishes that (1) Appellant was the only person from whom the victim received heroin prior to his death, (2) the victim communicated with Appellant via text messages to "Mal" on March 27 and 29, 2019, (3) Appellant personally delivered heroin to the victim on March 27th in Chester County, (4) Appellant personally delivered heroin and fentanyl to the victim in Philadelphia on March 29th, the drugs that resulted in the victim's death, and (5) the phone number supplied by Appellant to his probation officer two weeks earlier was identical to the "Mal" number in the victim's phone and the "Mal New" number in Norton's phone. Viewed collectively, this circumstantial evidence establishes

all elements of the first PWID charge (possession and intent to deliver) relating to the sale to the victim on March 29th.

The evidence also supports the second PWID conviction by demonstrating that Appellant was an accomplice to Norton's sale of drugs to the detective on April 3rd. The following evidence shows that Appellant aided Norton's delivery of the drugs to the detective: (1) the detective called the "Mal" number that the victim had used to purchase heroin from Appellant, (2) the detective requested a delivery of heroin that day to the victim's parents' residence; (3) later that day, the detective received a call from a person claiming to be Mal's brother who said he was en route with the drugs, (4) this person, who turned out to be Norton, arrived at the designated location and was arrested in possession of the drugs the detective had requested, (5) Norton's cell phone included a contact, "Mal New," that matched the "Mal" number in the victim's phone, (6) a review of Norton's known associates generated Appellant's name, and Norton identified Appellant as a family member, and (7) the phone number supplied by Appellant to his probation officer was identical to the "Mal" number in the victim's phone and the "Mal New" number in Norton's phone. The aid provided by Appellant subjected him to criminal liability as an accomplice. 18 Pa.C.S.A. § 306; **Murphy**, **supra**.

The DDRD statute provides that the defendant commits a first-degree felony if he "intentionally . . . delivers . . . [or] sells . . . any controlled substance or counterfeit controlled substance in violation of . . . the Controlled

Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance." 18 Pa.C.S.A. § 2506(a). The evidence demonstrates that on March 29, 2019, Appellant delivered and/or sold a controlled substance to Appellant at a Burger King in Philadelphia. Appellant later died as a result of using this substance. Accordingly, the evidence is sufficient to sustain Appellant's DDRD conviction.

Next, Appellant was found guilty of criminal conspiracy in connection with the sale of controlled substances to Detective Hyland on April 3, 2019. A person commits criminal conspiracy if (1) he intends "to commit or aid in the commission" of a crime; (2) he enters "into an agreement with another [a 'co-conspirator'] to engage in the crime;" and (3) he "or one or more of the other co-conspirators" commits an overt act in furtherance of their agreement. **Commonwealth v. Le**, 208 A.3d 960, 969 (Pa. 2019). Because direct evidence of criminal intent and conspiratorial agreement is rarely available, these elements are generally proven through circumstantial evidence, such as "the relations, conduct[,] or circumstances of the parties, or overt acts on the part of co-conspirators." **Id.** Among the circumstances that are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. **Commonwealth v. Jordan**, 212 A.3d 91, 97 (Pa. Super. 2019). "While such circumstances are

insufficient standing alone, they may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred." ***Commonwealth v. Carter***, 416 A.2d 523, 524 (Pa. Super. 1979).

The same evidence that supports Appellant's conviction for PWID in connection with the April 3, 2019 drug delivery also supports his conviction for conspiracy. In brief, the detective called Mal (Appellant) and requested a delivery of heroin. Later that day, Norton traveled to the designated location, stating that he was Mal's brother, and delivered the drugs to the detective. This demonstrates that Appellant intended to commit or aid in the commission of the crime of PWID and entered an agreement with Norton to commit this crime. Norton then engaged in overt acts (travel and delivery) in support of this agreement.

Finally, Appellant was convicted of two counts of criminal use of a communication facility in connection with the drug sales on March 29 and April 3, 2019. This offense requires proof that the defendant intentionally, knowingly, or recklessly used a communication facility and that he intentionally, knowingly, or recklessly used the facility to facilitate any crime under, *inter alia*, the Controlled Substance Act. 18 Pa.C.S.A. § 7512(a). A cellular telephone is a communication facility. 18 Pa.C.S.A. § 7512(c) (communication facility defined as "a public or private instrumentality used or

useful in the transmission of signs, signals, writing, images, sounds, data ... including a telephone").

The evidence shows that on March 29, 2019, Appellant and the victim exchanged text messages relating to the sale and/or delivery of controlled substances, and on April 3, 2019, Appellant and the detective exchanged text messages relating to the sale and/or delivery of controlled substances. Accordingly, the evidence supports Appellant's convictions under Section 7512.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2022